IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>TAHREON L. ALLEN (01),<br><br>                              Defendant. | Case No. 23-20051-01-DDC |

### MEMORANDUM AND ORDER

Defendant Tahreon L. Allen has filed a "Motion for Release from Custody or Transfer from FCI Leavenworth & Motion for hearing to Determine Competency." Doc. 143. The motion seeks two forms of relief. *One*, Mr. Allen asks the court to order "a mental health evaluation and mental health services." *Id.* at 1. The court grants this request in part and denies it in all other respects. Specifically, it orders a competency evaluation under 18 U.S.C. § 4241. But it denies the request for mental health services. *Two*, Mr. Allen seeks "relief in the form of a transfer from FCI Leavenworth or release from custody." The court denies this request.

The court explains its rulings, below.

**I.    Background**

The Indictment alleges that Mr. Allen and his co-defendants broke into the victim's residence and forcefully abducted the victim from his home, stealing cars and money in the process. Doc. 1 at 2. Mr. Allen first appeared in federal court in late August 2023. Doc. 141 at 4 (PSR ¶ 4). He's remained in federal custody since. *Id.* In January 2025, Mr. Allen pleaded guilty to one count of kidnapping. Doc. 102 at 1 (Plea Agreement).

Mr. Allen filed this motion as he's awaiting sentencing. He represents that the United States Marshal Service (USMS) transferred him to FCI Leavenworth in March 2024. Doc. 143 at 3. In November 2024, FCI Leavenworth sent Mr. Allen to the Special Housing Unit (SHU) for threatening a guard. *Id.* In December 2024, a disciplinary officer concluded Mr. Allen had indeed threatened someone, so the officer sanctioned Mr. Allen with, among other things, seven days of disciplinary segregation. *Id.* At that point, Mr. Allen already had stayed in disciplinary segregation for more than 30 days. *Id.*

Mr. Allen remains in the SHU. Mr. Allen reported to defense counsel that the USMS planned to transfer him. *Id.* In response to a defense counsel inquiry, the USMS confirmed that FCI Leavenworth had asked to move Mr. Allen, if possible, but the USMS had declined to do so. *Id.* at 4. In March 2025, defense counsel asked the USMS why Mr. Allen remained in the SHU and the USMS explained that Mr. Allen was placed there for threatening staff. *Id.* Defense counsel then contacted FCI Leavenworth about this placement, but her point of contact had no information. *Id.*

In July 2025, Mr. Allen reported mental decline because of his time in the SHU. *Id.* A social worker with the Federal Public Defender's Office visited Mr. Allen twice in July. *Id.* Mr. Allen reported hallucinations, strange sleep behaviors, and paranoia. *Id.* at 5. Defense counsel also noticed Mr. Allen's declined mental state during her visits with him in July. *Id.* at 6. Mr. Allen reported to defense counsel that the mental health professional in the SHU had refused to give him treatment. *Id.* Concerned, defense counsel contacted the Bureau of Prisons for more information in early August. *Id.* In late August, defense counsel received the incident report that precipitated Mr. Allen's transfer to the SHU and noted that the disciplinary sanction imagined only seven days in disciplinary segregation; it didn't explain why Mr. Allen had remained in the

SHU after seven days. *Id.* at 7. Around this time, Mr. Allen's mother contacted defense counsel to relay a concerning letter from Mr. Allen. *Id.* Mr. Allen wrote that he'd heard voices, had fallen ill due to mold in the cells, and has considered self-harm due to a physical assault. *Id.*

In September 2025, the prosecutor forwarded defense counsel a letter from the Bureau of Prisons about Mr. Allen. *Id.* at 8. The letter explained that Mr. Allen's placement decision was up to FCI Leavenworth. *Id.* The letter also explained that Mr. Allen was "in the SHU on a post-disciplinary basis." *Id.* The letter acknowledged that, ordinarily, FCI Leavenworth would have transferred Mr. Allen back to the general population within 90 days of "entering post-disciplinary detention status[.]" *Id.* But, BOP counsel explained, that "expectation . . . does not apply to pretrial inmates as we cannot transfer USMS detainees to other institutions." *Id.* The same letter also explained that it was up to the USMS whether to transfer Mr. Allen. Put simply, BOP doesn't want Mr. Allen moved out of the SHU into the general population and thus normally would transfer him, but that's up to the USMS.

Mr. Allen now asks the court either to order Mr. Allen's transfer to another facility or order him released from custody. *Id.* at 11. And—though the title of Mr. Allen's motion asks the court to mandate "a mental health evaluation" and some unidentified form of mental health services, *id.* at 1—the full text of his motion reveals that he's asking the court to "consider whether it is appropriate to order that Mr. Allen be examined to determine his competency," *id.* at 10.

The court tackles each request, below, starting with competency.

## II. Competency

In the motion, defense counsel asserts "that continued stay in the SHU and the absence of meaningful access to mental health services will render Mr. Allen unable to assist counsel with matters in mitigation for sentencing." Doc. 143 at 11. Counsel reports that she has raised the

3

competency issue based on her own observations, the observations of the FPD's social worker, and symptoms that Mr. Allen reported to his family. *Id.* Counsel also reports that the defense investigated Mr. Allen's background and discovered a history of mental health diagnoses. *Id.* During the hearing on this motion, defense counsel reported that she holds no concerns about Mr. Allen's ability to understand the procedural status of the case. But she reports concerns about Mr. Allen's ability to assist in his own defense—namely, preparing for sentencing.

The standard controlling mental competency evaluations comes from both case law and federal statute. First, the case authority. "The Fifth Amendment's Due Process Clause precludes district courts from subjecting a mentally incompetent criminal defendant to trial." *United States v. Landa-Arevalo*, 104 F.4th 1246, 1252–53 (10th Cir. 2024). A "district court violates a criminal defendant's right to procedural due process by failing to hold an adequate competency hearing and violates a defendant's substantive due process rights by trying him during incompetency." *Id.* at 1253. Due process requires the court to determine "whether a defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him.'" *Bryson v. Ward*, 187 F.3d 1193, 1201 (10th Cir. 1999) (quotation cleaned up) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). To make this determination, "a trial court considers evidence of a defendant's irrational behavior, his courtroom demeanor, and any medical opinion bearing on competency." *Id.* The court also "may rely on its own observations of the defendant's comportment." *Id.* "Defense counsel is often in the best position to determine whether a defendant's competency is questionable." *Id.* at 1201–02. But defense counsel's concerns "alone are insufficient to establish doubt of a defendant's competency." *Id.* at 1202.

4

Next, the statute. Section 4241 of Title 18 of the United States Code provides that federal courts must order a judicial determination of a defendant's mental competency "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." This standard applies at every increment after the prosecution has commenced and through sentencing. *Id.* The statute boils down to two steps:

> (1) "a district court must determine whether reasonable cause exists to believe the defendant may be mentally incompetent; if so, the district court must conduct a competency hearing."
>
> (2) "if the competency hearing establishes the defendant's mental incompetency by a preponderance of the evidence, the district court must halt the proceeding."

*Landa-Arevalo*, 104 F.4th at 1253 (first citing 18 U.S.C. § 4241(a); and then citing 18 U.S.C. § 4241(d)). That first step—the focus of this Order—is a low bar. "Absent findings of an insufficient factual basis for a § 4241(a) motion, or a lack of good faith in making the motion, a competency evaluation is required." *United States v. Ramirez*, 304 F.3d 1033, 1035 (10th Cir. 2002).

Here, one could read Mr. Allen's filing to equivocate about whether counsel believes a competency evaluation is in order. *See, e.g.*, Doc. 143 at 10 ("Defense counsel asks the Court [to] consider whether it is appropriate to order that Mr. Allen be examined to determine his competency[.]"). But counsel's other statements leave no doubt. During a September 16, 2025 hearing on Mr. Allen's motion, defense counsel precisely articulated Mr. Allen's request of the court: "His request is for an evaluation." Sept. 16 Hr'g Tr. 88:16.

The capacity of the record here is regrettably limited. Specifically, the court itself hasn't observed irrational behavior by Mr. Allen during his court proceedings. But plainly, aspects of

5

Mr. Allen's offense conduct manifest irrational conduct, like stealing from the same victim twice and driving to a court proceeding in the criminal case stemming from the first robbery—in a car stolen during the second robbery of the same victim. Doc. 141 at 9 (PSR ¶ 27). Likewise, the court's observations about Mr. Allen's courtroom demeanor are limited. Mr. Allen has seemed withdrawn in more recent hearings. But in other hearings, he appeared actively engaged with his counsel. No available medical opinion informs the competency question. But defense counsel reports that defendant first was hospitalized for psychiatric issues at age five, and that he "has a history of mental health diagnoses throughout his childhood[.]" Doc. 143 at 11.

The more fulsome source of pertinent information comes from Mr. Allen's counsel. As recounted above, Mr. Allen reported declining mental health to his counsel over the summer. *Id.* at 4. And he reported some concerning symptoms to FPD's social worker, including "tactile hallucinations, specifically of things crawling on his skin during showers." *Id.* at 4–5. More directly, and more recently, Mr. Allen's counsel reports that she observed Mr. Allen's "difficulty conveying thoughts about his case, its current procedural posture, and its procedural history." *Id.* at 6. Defense counsel reports that this represents "a change from defense counsel's past interactions with Mr. Allen." *Id.*

While there's some uncertainty, the court is mindful of the Circuit's observation, *i.e.*, "Defense counsel is often in the best position to determine whether a defendant's competency is questionable." *Bryson*, 187 F.3d at 1201. The court is persuaded. Mr. Allen has done enough to present the required reasonable cause for a competency evaluation. This Order thus mandates an evaluation under § 4241. In contrast, the court denies Mr. Allen's secondary request—that is, his request for "mental health services." Doc. 143 at 1. The current record doesn't establish that he

needs such services. And, as explained below when addressing his request for transfer or release, he can't seek these services in this criminal case.

The court moves on to the transfer-or-release portion of Mr. Allen's motion, next.

### III. Transfer or Release

Mr. Allen's motion focuses on his time in the SHU and invokes his Eighth Amendment right against cruel and unusual punishment and his liberty interests under the Fourteenth Amendment.[1] But, even assuming a constitutional violation, the primary problem for Mr. Allen is the court's authority to order certain forms of relief in this pending criminal case.[2]

As an initial matter, Mr. Allen and the government agree that this court doesn't have the authority to order FCI Leavenworth to release Mr. Allen from the SHU. Doc. 151 at 1. SHU release aside, the motion seeks a court "order that he receive a mental health evaluation and mental health services." Doc. 143 at 1. To the extent Mr. Allen seeks an order compelling BOP to provide him with mental healthcare, the persons who would provide that healthcare are not before this court. And so, if Mr. Allen wishes to challenge the care he has received—or not received—he "would need to file a separate civil action against the custodian alleging deliberate indifference to a serious medical need and possibly seeking injunctive relief concerning the provision of medical care." *United States v. Edwards*, No. DKC 13-0650, 2014 WL 12669554,

---

[1]  Only one of these constitutional provisions applies to Mr. Allen. "'Pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment.'" *Ullery v. Bradley*, 949 F.3d 1282, 1296 (10th Cir. 2020) (quoting *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999)).

[2]  The court tried to get defense counsel to address this sticking point. At a hearing on September 16, the court asked defense counsel "to provide additional legal authority . . . [providing that] the court has the power to do what you're asking to do[.]" Hr'g Tr. 97:18–21. Counsel submitted a supplement claiming that the court had "asked for supplemental briefing that addressed the analysis the Court should conduct when determining whether an administrative measure amounts to punishment." Doc. 151 at 1. That is not the question the court asked counsel to address.

at *1 (D. Md. Mar. 25, 2014) (denying pretrial defendant's motion, filed in defendant's criminal case, to transfer to another facility for medical reasons).

Mr. Allen's motion also requests transfer from FCI Leavenworth to another facility. Doc. 151 at 3. This request faces long odds. The Supreme Court has noted that "the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). In light of these problems, the Supreme Court has explained that courts should accord prison administrators with "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.*

But, even assuming a constitutional violation, Mr. Allen faces a bigger obstacle than deference. Our Circuit has held "that a request by a federal prisoner for a change in the place of confinement is properly construed as a challenge to the conditions of confinement and, thus, must be brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)." *United States v. Garcia*, 470 F.3d 1001, 1003 (10th Cir. 2006) (quotation cleaned up). This Circuit authority held that the district court properly dismissed claims raised by motions filed in prisoners' criminal cases and thus failed to comport with *Bivens*'s requirements. *Id.*

*Garcia* compels the same outcome here: If Mr. Allen seeks transfer, he should file a civil lawsuit. True, the district court already had sentenced the defendants in *Garcia*, so they were in BOP custody. Mr. Allen, in contrast, is in USMS custody. In Mr. Allen's view, this distinction makes all the difference. Doc. 151 at 1. But he admits that he lacks authority for this view. *See id.* at n.1. And, curiously, he explicitly acknowledges that the USMS deserves deference just like the BOP. *Id.* Mr. Allen nonetheless asserts that the USMS differs "slightly" from BOP

because "it contracts with facilities who can independently determine whether they are equipped to house a particular inmate." *Id.* To Mr. Allen, it matters that the USMS "has spoken for *all* their contracted facilities without allowing them to make the independent determination." *Id.* The court's not sure what this assertion even means. As best the court can tell, Mr. Allen wants the court to order the USMS to ask each of its contracting facilities whether it could house Mr. Allen. But nothing supports Mr. Allen's supposition that he deserves a round-the-horn evaluation by each of the contracted facilities currently under contract with the USMS.

Nor does Mr. Allen ever grapple with the binding Circuit authority that requires him to litigate this issue in a separate civil action. Indeed, the very cases he relies on should have directed him to this fundamental problem with his motion. Doc. 151 at 2 (first citing *Bell*, 441 U.S. at 538; and then citing *Blackmon v. Sutton*, 734 F.3d 1237 1241 (10th Cir. 2013)). *Bell* was a petition for a writ of habeas corpus. 441 U.S. at 526. And *Blackmon* was a § 1983 action. 734 F.3d at 1239. The court thus denies Mr. Allen's request for a transfer.

As a final matter, Mr. Allen requests that, if the court doesn't order transfer, then it should order him released. Unlike the other requests, this request comes in a procedural vehicle that the court recognizes. Mr. Allen fashions this request as an appeal from the magistrate judge's detention order under 18 U.S.C. § 3145(c).[3] This statute allows the court to overrule the

---

[3] The government complains that Mr. Allen hasn't cited any authority that § 3145 can "substitute for available BOP administrative remedies or a separate civil action upon the exhaustion of such remedies." Doc. 149 at 4. This is wrongheaded. Of course Mr. Allen can seek pretrial release in his criminal case; Congress explicitly provided a mechanism by which a defendant could seek release pending sentencing: 18 U.S.C. § 3143. The government's reliance on an administrative-remedies argument falls on deaf ears because the exhaustion requirements of the PLRA apply to *civil* lawsuits brought *by prisoners*. 42 U.S.C. § 1997e(a). And a criminal defendant can seek release in a civil lawsuit only in very narrow circumstances:

> In any civil action with respect to prison conditions, no court shall enter a prisoner release order unless (i) a court has previously entered an order for less intrusive relief that has failed to remedy the deprivation of the Federal right sought to be remedied through the

9

magistrate judge's order of pretrial detention "if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c).

United States Magistrate Judge Angel Mitchell ordered Mr. Allen detained pending trial. Doc. 27. As relevant here, she found "by a preponderance of the evidence, that no condition or combination of conditions will reasonably assure the appearance of defendant as required." *Id.* at 1. She further found "by clear and convincing evidence, that no condition or combination of conditions will reasonably assure the safety of any other person or the community." *Id.* Judge Mitchell emphasized the nature and circumstances of the offense, calling the crimes at issue "a disturbingly vicious serious of events." *Id.*

Though this is the determination that Mr. Allen seeks to appeal, he never challenges Judge Mitchell's findings. *See* Doc. 143 at 10. Instead, he insists that his "prolonged placement in the SHU with no relief from FCI Leavenworth or USMS constitutes exceptional reasons." *Id.* The court is not impressed with this premise.

But even if Mr. Allen qualified for the exceptional reasons exception in § 3145(c), his argument skips right over the provision's other relevant requirements—*i.e.*, meeting 18 U.S.C. § 3143(a)(1). To meet § 3143(a)(1), Mr. Allen would have to show (by clear and convincing evidence) that he "is not likely to flee or pose a danger to any other person or the community." 18 U.S.C. § 3143(a)(1); Fed. R. Crim. P. 46(c) ("The burden of establishing that the defendant

---

        prisoner release order; and (ii) the defendant has had a reasonable amount of time to comply
        with the previous court orders.

18 U.S.C. § 3626(a)(3)(A). So, the court doesn't see any problem with Mr. Allen invoking § 3145 here. What's more, a § 3145 motion based on prison conditions isn't unheard of; district courts received many during the COVID-19 pandemic. *See, e.g.*, *United States v. Duncan*, 452 F. Supp. 3d 1016, 1019 (D. Kan. 2020).

will not flee or pose a danger to any other person or to the community [pending sentencing] rests with the defendant."). He doesn't even try to make either showing.

It would be a hard showing to make. Mr. Allen pleaded guilty to a Class A felony, Kidnapping under 18 U.S.C. § 1201(a)(1). And the court agrees with Judge Mitchell that the crime to which Mr. Allen has pleaded guilty was a "a disturbingly vicious series of events." Doc. 27 at 1. Mr. Allen robbed the same victim twice; a victim who now has testified at Mr. Allen's sentencing hearing. And Mr. Allen's Presentence Investigation Report calculates his Guidelines' range as "life." Doc. 141 at 37 (PSR ¶ 125). Given the seriousness of his conviction and his substantial criminal history—Category III—the court couldn't possibly find that Mr. Allen satisfies § 3143(a)(1)'s requirements.

In sum, the court declines to order Mr. Allen's release.

## IV.     Conclusion

The court denies Mr. Allen's request for mental health services. It grants his request for a competency evaluation under § 4241, however. Also, it denies his request for transfer and his request for release.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Allen's "Motion for Release from Custody or Transfer from FCI Leavenworth & Motion for hearing to Determine Competency" (Doc. 143) is granted in part and denied in part.

**IT IS SO ORDERED.**

**Dated this 29th day of October, 2025, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge